Gary L. Babin et al., Appellants *v.* City of Lancaster, Appellee.

Argued February 1, 1985, before Judges Doyle and Palladino and Senior Judge Barbieri, sitting as a panel of three.

528

. . *Penn B. Glazier,* for appellants.

*Louis J. Farina, Blakinger, Grove & Chillas, P.C.,* for appellee.

OPINION BY SENIOR JUDGE BARBIERI, May 29, 1985:

Gary L. Babin, Barbara N. Babin, and TKC Ltd., Inc.,[1] d/b/a The King of Clubs Health Club, a/k/a The King of Clubs, hereinafter referred to collectively as Appellants, appeal here an order of the Court of Common Pleas of Lancaster County which held that Appellants violated the Zoning Ordinance of the City of Lancaster (City) by operating a massage parlor in violation of the terms of a special exception granted by the Zoning Hearing Board (Board) of Lancaster. That order permanently enjoins Appellants from operating their present business at their present location, imposes fines of $1,000 each upon Gary Babin and Barbara Babin for past zoning violations, and im-

---

[1] TKC Ltd., Inc., is a corporation which is the present operator of the King of Clubs. The testimony before the chancellor stated that while Mr. & Mrs. Babin originally opened the King of Clubs in February of 1981 as a partnership, the following year a corporation, TKC Ltd., Inc., was formed to operate the King of Clubs. Mr. & Mrs. Babin both testified that Mrs. Babin is the sole shareholder and director of TKC Ltd., Inc., and the sole operator of the King of Clubs. The chancellor, after reviewing the testimony, found that both Gary L. Babin and Barbara N. Babin were the owners of TKC Ltd., Inc., which in turn owned and operated the King of Clubs. That finding is not challenged by Appellants in this appeal.

poses additional fines of $200 per day if Appellants fail to comply with the zoning ordinance after October 15, 1983.

The pertinent facts of this case are as follows. The Babins desired to operate a business, which they represented to be a health club, in a portion of premises 1085 Manheim Pike in Lancaster. They applied for a special exception to continue a prior non-conforming use of this property by substituting their health club for an accountant's office. The Board approved the special exception on December 1, 1980 with the following express conditions: (1) that no massage services shall be provided except as ancillary to traditional health club exercise activities; and (2) the facility shall not be promoted or advertised for massage services nor be operated as a massage parlor. The Babins did not object to these conditions and opened their establishment in February of 1981.

Acting upon complaints received regarding the Babins' establishment, the Zoning Officer of Lancaster conducted an investigation of the establishment, called "The King of Clubs." As a result of his investigation, the Zoning Officer concluded that the King of Clubs was being operated primarily as a massage parlor and that few, if any, other health club activities were being undertaken. On February 12, 1982, he issued the Babins a written notice of the alleged violation of the Board's December 1, 1980 decision. When the Babins failed to correct their business practices to conform to the terms of their special exception, the City filed a complaint in equity seeking a permanent injunction to enjoin Appellants from operating a massage parlor as well as fines for their past violations of the Board's decision of December 1, 1980. At the hearing held before the trial judge, sitting as a chancellor in equity, Appellants attacked the validity of

the special conditions of the Board's December 1, 1980 order as well as denying they operated a massage parlor. In his adjudication the chancellor found that the King of Clubs was indeed operated as a massage parlor in violation of the Board's December 1, 1980 decision. The City was granted the requested injunction and the Babins were fined $1,000 each for past violations and the chancellor imposed additional fines of $200 per day if Appellants continued in violation of the Board's December 1, 1980 decision after October 15, 1983. Exceptions filed by Appellants to the chancellor's adjudication were dismissed by the chancellor for a court en banc and this appeal followed.

In this appeal, Appellants contend that a number of the chancellor's findings of fact are not supported by substantial evidence; that the chancellor committed several errors of law; and that the special conditions imposed by the Board amount to a taking of their property without due process or just compensation. We are cognizant, of course, that our scope of review in equity matters is limited to determining whether the chancellor's findings are supported by substantial evidence, an error of law was committed; or whether the chancellor abused his discretion. *Groff v. Borough of Sellersville,* 12 Pa. Commonwealth Ct. 312, 317, 314 A.2d 328, 332 (1974).

The chancellor's findings of fact which are challenged by Appellants are findings seven, nine, twelve, thirteen and fourteen.[2] Our review of the record convinces us that there is substantial evidence to support

---

[2] The chancellor's Findings of Fact seven, eight, nine, twelve, thirteen, and fourteen read as follows:

7. Since its inception, the primary source of income of the business run by the Babins have been fees paid by male clients for massage services. Virtually all of these massages include the stimulation of the male genitals to produce ejaculation.

those findings. The testimony of the Zoning Officer, his supervisor and Appellants' former employee, as well as that of Mrs. Babin herself, support the chancellor's findings that the primary business of the King of Clubs was providing sexually-oriented massages to patrons and that the exercise equipment was present only for appearance and rarely, if ever, used. The testimony of those witnesses also supports the findings that the Appellants were patently aware of the terms of their special exception; of what type of business they were operating;[3] and that this business was

---

8. The massage referred to in the preceding paragraph is commonly known as the hand release and represents the very basic and cheapest massage. Patrons of the King of Clubs who were willing to pay for it could massage the female attendant while he himself was being massaged.

9. The exercise equipment at the King of Clubs was essentially there to give an appearance of a club where one could exercise in various ways. It appeared from both the testimony and the pictures to be virtually untouched and unused.

* * * *

12. The Babins from the outset knowingly, willfully, and inentionally [sic] violated the conditions of the special exception and continued to do so even after the notice of violation was sent to them on February 12, 1982.

13. While the Babins professed a lack of understanding as to the meaning of the term "massage parlor," the inference from the depositions and testimony at the hearing is that this alleged misunderstanding could only result from a naivete which the Babins certainly do not have.

14. The Babins knew at all times pertinent to this action that the conditions of the special exception *did not* permit the type of massages referred to in Findings of Fact 7 and 8. (Emphasis in original.)

Finding of Fact eight is not challenged by Appellants but we set it forth at length as it is necessary in evaluating the challenged findings.

[3] Appellants complain that the chancellor continually referred to the King of Clubs as a "massage parlor" while never defining

in direct violation of the conditions of their special exception.[4] The fact that there exists evidence in the record contrary to those findings does not mean that those findings are not supported by substantial evidence as it is wholly within the province of the chancellor to accept the testimony of one witness over that of another. It is well-settled that issues of witness credibility and evidentiary weight are within the exclusive province of the chancellor. *Machalicka v. Lukasevic*, 346 Pa. 487, 31 A.2d 164 (1943); *Miller v. Central Trust & Savings Co.*, 285 Pa. 472, 132 A. 579 (1926). Where the chancellor's findings are based upon his evaluation of the credibility of witnesses who appeared before him, and are supported by substantial evidence, they will not be disturbed by an appellate

---

what constitutes a "massage parlor." Our research has also failed to discern a satisfactory definition of "massage parlor." For our purposes here, we define "massage parlor" as a commercial enterprise whose primary business emphasis is the administration of sexually-oriented massages to patrons by employees. We specifically hold that the business' own characterization of itself as a "health club" does not exclude it from being a "massage parlor" where the purpose of the business is to provide sexually-oriented massages to patrons. *See Hawkins v. Zoning Hearing Board of Bristol Township*, 76 Pa. Commonwealth Ct. 470, 463 A.2d 1291 (1983); *see also Bensenville v. Botu, Inc.*, 39 Ill. App. 3d 634, 350 N.E. 2d 239 (1976); *Chicago v. Geraci*, 30 Ill. App. 3d 699, 332 N.E. 2d 487, 80 A.L.R. 3d 1013 (1975); *see generally*, Annot. 80 A.L.R. 3d 1020 (1977).

[4] The record clearly shows that appellants blatantly violated the second condition of the grant of their special exception by advertising the King of Clubs as a massage parlor. The 1981 edition of the Lancaster telephone yellow pages directory contains a quarter page display advertisement for the King of Clubs under the heading "Massage." The advertisement also touts the availability of "confidential billing." An example of this display advertisement was attached to the City's complaint in equity and appellants admitted that they placed the advertisement in the Lancaster yellow pages. Upon calling the telephone number shown in the advertisement, the caller would be provided with a listing of the massage services provided and their respective costs.

court on review. *Kees v. Green,* 365 Pa. 368, 75 A.2d 602 (1950); *In re De Maio's Estate,* 363 Pa. 559, 70 A.2d 339 (1950). We must, therefore, reject Appellants' challenge to the evidentiary support for the chancellor's findings.

We next turn to Appellants' contention that equity is not the proper forum for the City to seek to enforce the conditions of a special exception or collect a penalty for noncompliance with those conditions. We disagree. Section 617 of the Pennsylvania Municipalities Planning Code (Code), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10617, clearly empowers municipalities to seek equitable relief to restrain violations of their zoning ordinances, including noncompliance with special conditions attached to the grant of a special exception. *Board of Supervisors of West Brandywine Township v. Matlack,* 38 Pa. Commonwealth Ct. 366, 394 A.2d 639 (1978). The fact that the muncipality has the power to impose penalties for zoning ordinance violations does not limit the availability of equitable relief. *Id.* at 369, 394 A.2d at 641; *see also South Fayette Township v. Boy's Home,* 31 Pa. Commonwealth Ct. 254, 376 A.2d 663 (1977); *compare* Section 617 of the Code *with* Section 616 of the Code, 53 P.S. §10616. We find, therefore, that the City had the power to seek equitable relief to enjoin Appellants' violation of the terms of their special exception.

Appellants also contend that a court sitting in equity has no authority to impose fines for noncompliance with the conditions of a special exception in that the imposition of a fine is a criminal penalty. It is well-settled that under the laws of this Commonwealth, an action instituted for violation of a municipal ordinance is a civil proceeding. *Commonwealth v. Ashenfelder,* 413 Pa. 517, 198 A.2d 514 (1964); *Commonwealth v. Carter,* 36 Pa. Commonwealth Ct. 569,

377 A.2d 831 (1977), *modified,* 36 Pa. Commonwealth Ct. 569, 389 A.2d 241 (1978). Likewise, we have held that the imposition of a fine for the violation of a municipal ordinance is a civil proceeding brought to recover a penalty due. *See Commonwealth ex rel. Allegheny County Health Department, Bureau of Air Pollution Control v. University of Pittsburgh,* 37 Pa. Commonwealth Ct. 117, 388 A.2d 1163 (1978). It is also well-settled that once equity obtains jurisdiction, that jurisdiction continues until all issues raised have been resolved. *McGovern v. Spear,* 463 Pa. 269, 344 A.2d 826 (1975); *Wortex Mills v. Textile Workers Union,* 380 Pa. 3, 109 A.2d 815 (1955); *Bowman v. Gum, Inc.,* 327 Pa. 403, 193 A. 271 (1937). The purpose of this rule is to avoid a multiplicity of suits and afford complete relief to the parties. *Hagy v. Premier Mfg. Co.,* 404 Pa. 330, 172 A.2d 283 (1961); *Nedwidek v. Nedwidek,* 371 Pa. 621, 92 A.2d 536 (1952).

We have previously upheld equity adjudications in which the chancellor granted an injunction while also imposing a fine for violation of a zoning ordinance. *Bradley v. Township of South Londonderry,* 64 Pa. Commonwealth Ct. 395, 440 A.2d 665 (1982); *City of Philadelphia v. Stradford Arms, Inc.,* 1 Pa. Commonwealth Ct. 190, 274 A.2d 277 (1971). In *Bradley,* we approved of a chancellor's adjudication which enjoined the landowners from operating a junkyard while at the same time imposing a fine of $500 per day for each day of noncompliance. In *City of Philadelphia,* we upheld a chancellor's adjudication which enjoined the owner of an apartment house to bring the building into compliance with the City's zoning ordinance while at the same time imposing a fine of $15 per day for violating that ordinance. Therefore, we reject Appellants' contention that it was improper for a court sitting in equity to impose both an injunction

and a civil fine for violating the terms of a special exception.

Appellants' final contention is that the conditions which the Board attached to the grant of their special exception amounted to an abuse of discretion, are without basis in law, and amount to a taking of their property without due process of law or payment of just compensation. The chancellor found that Appellants were precluded from challenging the validity of the conditions attached to their special exception by virtue of their failure to appeal the Board's imposition of those conditions. Section 1001 of the Code, 53 P.S. §11001, specifically states that the procedures set forth in the Code are the *exclusive* mode for securing review of any ordinance, decision, determination or order of a municipality, its agencies or officers which is adopted or issued pursuant to the Code. Section 1006 of the Code, 53 P.S. §11006, sets forth the procedure for appealing decisions of zoning boards and deals with decisions such as the one which granted the Appellants' special exception subject to the specified conditions. We have previously held that this is the exclusive method of challenging the decision of a zoning board. *Peruzzi v. Falls Township,* 48 Pa. Commonwealth Ct. 392, 410 A.2d 93 (1980). By failing to appeal the imposition of the conditions to their grant of a special exception, Appellants have waived their right to seek review of those conditions. *Atlantic Richfield Co. v. Marshall Township Board of Supervisors,* 74 Pa. Commonwealth Ct. 100, 459 A.2d 860 (1983); *see also, Kar Kingdom, Inc. v. Zoning Hearing Board of Middletown Township,* 88 Pa. Commonwealth Ct. 364, 489 A.2d 972 (1985) (there is no authority in law for the proposition that unappealed orders of zoning officers are subject to review whenever in the future the municipality seeks to enforce them). This waiver

also precludes Appellants raising constitutional challenges to the validity of those conditions. *See Bamash v. Zoning Board of Adjustment,* 11 Pa. Commonwealth Ct. 420, 313 A.2d 370 (1973). Accordingly, since we agree with the chancellor that Appellants have effectively waived their right to challenge the validity of the conditions attached to the grant of their special exception as a result of their failure to appeal the Board's order as specified by the Code, we need not address the merits of their challange.[5]

Having found the chancellor's findings of fact supported by substantial evidence, no error of law nor abuse of discretion having been committed, we shall affirm the order of the Court of Common Pleas of Lancaster County dismissing Appellants' exceptions to the chancellor's Decree Nisi and confirming that decree as modified.

### ORDER

AND Now, this 29th day of May, 1985, the order of the Court of Common Pleas of Lancaster County at Equity Docket No. 22, page 74, dated January 10, 1984, dismissing Appellants' exceptions to the Chancellor's Decree Nisi and confirming that decree as modified, is hereby affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

[5] While we do not specifically address Appellants' constitutional challenge to the conditions prohibiting them from running a "massage parlor," we do note that the regulation of so-called "massage parlors" has been held to be a proper exercise of a municipality's police power. *See Garaci v. City of Memphis,* 379 F. Supp. 1393 (W.D. Tenn. 1974) ; *Corley v. City of Dallas,* 352 F. Supp. 977 (N.D. Tex. 1972) ; *see generally,* Annot. 80 A.L.R. 3d 1020 (1977) ; Annot. 17 A.L.R. 2d 239 (1951). Appellants' constitutional challenges, therefore, appear to be without merit.